UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAY LEE HOLMES,

Plaintiff,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS et al.,

Defendants.

Case No. 1:25-cv-1210

Honorable Maarten Vermaat

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. The Court will also grant Plaintiff's two motions to amend or correct his complaint. (ECF Nos. 5 & 10). The Court will deny Plaintiff's request for the appointment of counsel at this time. (ECF No. 6.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.”).[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections (MDOC), Corizon Inc. (Corizon), and King.

The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Moore, Lane, Smith, Soper, Demaagd, Dial, Medina, Ross, Baldwin, and Sportell: First Amendment retaliation claims, Fourteenth Amendment equal protection claims, and claims under the Americans with Disabilities Act and the Rehabilitation Act.

Plaintiff's Eighth Amendment excessive force claims against Defendants Moore, Lane, Smith, Soper, Demaagd, Dial, Medina, Ross, and Baldwin and Eighth Amendment medical care claim against Defendant Sportell will remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), “context matters” and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of “parties” and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of “the term ‘parties’ solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of ‘parties’ in other contexts”).

**Discussion**

**I. Factual Allegations**

Plaintiff is presently incarcerated with the MDOC at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains, however, occurred at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues the following **13 Defendants:** the **MDOC**, **Corizon**, and the following LRF staff: Warden **C. King**, Corrections Officer (CO) **C. Lane**, CO **J. Moore**, CO **K. Smith**, Prison Counselor **Unknown Soper**, CO **Unknown Damaagd**, CO **Unknown Dial**, CO **Unknown Medina**, CO **Unknown Ross**, CO/Sergeant **Unknown Baldwin**, and Nurse **Christopher M. Sportell**. (Compl., ECF No. 1, PageID.1–3.)

Plaintiff alleges he is "a deaf [and] hard of hearing prisoner," who "was not given any hearing aids or anything to help with hearing and has a hard time understanding things when they are said."[2] (*Id.*, PageID.5.) On January 23, 2025, Plaintiff claims he came out of his cell and said, "Who do I need to talk to, to get out of prison, I've done everything y'all wanted me to." (*Id.*) Plaintiff alleges that Defendants Moore and Smith approached him and that Defendant Moore had his "pca/mace out [and] point[ed] it at the Plaintiff." (*Id.*) Plaintiff pointed at Defendant Moore and said, "Don't spray me with that mace, I haven't done anything." (*Id.*) Plaintiff alleges he got "down on his knees with his hands in the air," to show he wasn't resisting. (*Id.*) Defendant Moore told Plaintiff to "stand up to cuff up," and when Plaintiff stood, Defendant Moore sprayed Plaintiff with the mace. (*Id.*) Plaintiff then claims that Defendant Moore "jump[ed] on the Plaintiff's back [and] Plaintiff [went] down in the prone position." (*Id.*) Plaintiff claims Defendant Moore sprayed

[2] In this opinion, the Court corrects the punctuation, capitalizations, abbreviations, and grammar in quotations from Plaintiff's filings.

Plaintiff with mace a second time and that Plaintiff was "blinded and put in handcuffs by [Defendants] J. Moore, C. Lane, and K. Smith." (*Id.*) Plaintiff claims that in the "next five minutes," Defendants Soper, Dial, Demaagd, Medina, Ross, and Baldwin arrived at the incident. (*Id.*) Plaintiff states that "[w]hile [he] was in handcuffs and in the prone position, [Defendant] Dial str[uck] Plaintiff twice in his upper right [thigh], while other officers held Plaintiff down." (*Id.*) Defendant Ross "took off Plaintiff's shoes and was striking Plaintiff in his right calf, leaving a bruise." (*Id.*) Plaintiff alleges that "[a]fter five minutes, Plaintiff was put in the restraint chair and taken to segregation." (*Id.*)

Plaintiff's complaint then alleges that "[o]nce in segregation, Plaintiff told [Defendant] Baldwin that [Plaintiff] was assaulted by his officers and that he want[ed] to talk to the state police before being push[ed] up to a wall for an hour." (*Id.*) Plaintiff states he "sat there pleading and begging while the handcuffs were on too tight and the mace burning his eyes." (*Id.*) Defendant Nurse Sportell "came to the [restraint] chair, only checking the straps and went to talk to [Defendant] Baldwin." (*Id.*) Plaintiff also informed Defendant Baldwin "that the cuffs were too tight and the mace was burning [Plaintiff's] eyes badly." (*Id.*) Plaintiff claims that Defendant Baldwin stated, "You shouldn't [have] assaulted one of my officers" and left the area. (*Id.*) Plaintiff alleges he "sat in the chair for 45 minutes to an hour in the[se] conditions" before he was taken to a shower by non-party CO Ward. (*Id.*) Plaintiff alleges he "had to shower in hot water, which made the mace burn more, without anything to wash the mace out or neutralize it." (*Id.*, PageID.6.) Plaintiff was also given a drug test and was "negative of all substances." (*Id.*, PageID.5.) Non-party Sergeant Clark "took pictures of Plaintiff's eyes, wrist, and hands," and Plaintiff "sat in the shower for another hour or more with mace burning his eyes." (*Id.*, PageID.6.)

Plaintiff alleges that "within four hours, [he] was reviewed on two tickets: a substance abuse [ticket] by [Defendant] Lane, and an assault and battery (staff victim) [ticket] by [Defendant] Dial." (*Id.*) Plaintiff claims that these tickets were written "to cover up the assault / excessive force used by the [Defendants]." (*Id.*) Plaintiff states that "later that day, [non-party] CO Unknown Ward came to Plaintiff's cell in segregation and was talking to Plaintiff and saw [that] Plaintiff's eyes were still red . . . [and] burning and the Plaintiff was still in emotional distress and crying about the incident." (*Id.*) That night, Plaintiff "had a swollen left eye and it was still burning and red . . . Plaintiff was taken to healthcare by [Defendant] Moore between the hours of 8:00 P.M. to 12:00 A.M. and was given no help." (*Id.*) Plaintiff was "found not guilty of the substance abuse and the actual assault of [Defendant] Dial," on February 3, 2025. (*Id.*)

Plaintiff makes several allegations pertaining to his grievances. On January 24, 2025, Plaintiff saw non-party Acting Inspector Paul Jenson and "told him what happened and [Plaintiff] wanted to talk to the state police to file a report." (*Id*). Non-party Jenson told Plaintiff, "I'm going to call the State Police, but on you, to press charges for assault. I'm here to protect my officers." (*Id.*) Plaintiff claims that he was "moved to Level 4" later that day. (*Id.*) On January 26, 2025, Plaintiff "put in his Step One grievance," and it was denied on February 6, 2025. (*Id.*) On January 28, 2025, Plaintiff "went to get his property. His TV, headphones, and fan were missing." (*Id.*) Non-party CO Wittenburg told Plaintiff he would try to locate Plaintiff's items, and there was "no pack-up slip to state who packed up [Plaintiff's] property." (*Id.*) On an unspecified date, Plaintiff "turned in his Step Two grievance and [his] Step One [grievance] about his property." (*Id.*) On February 26, 2025, Defendant Ross asked Plaintiff, "How's [your] grievance going?" and "laugh[ed] about what happened to [Plaintiff]." (*Id.*)

As to medical care that Plaintiff received from non-parties at LRF, on January 28, 2025, "[non-party] nurse practitioner Michelle Bray saw [Plaintiff's] burns from the mace and cuts on his wrists. She gave [Plaintiff] some triple antibiotic ointment." (*Id.*) On February 4, 2025, Plaintiff "went to see [non-party] Nurse Lisa Willa about the cuts on [Plaintiff's] wrist." On February 8, 2025, Plaintiff "kited healthcare to see optometry about his left eye being blurry and [to see] mental health about the incident." (*Id.*) Plaintiff went to the optometrist on February 19, 2025. (*Id.*) On February 24, 2025, Plaintiff was "diagnosed . . . with nerve damage and g[iven] naproxen for [his] pain." (*Id.*)

Subsequently, on March 6, 2025, Plaintiff was transferred to "Ionia Bellamy Creek [IBC] to a special unit as a form of punishment." (*Id.*). While at IBC, on March 14, 2025, Plaintiff received the denial of his previously filed Step Two grievance, and Plaintiff alleges the grievance was denied because "they thought the Plaintiff was intoxicated." (*Id.*) On March 17, 2025, Plaintiff "sent in [his] Step Three grievance to [the] director's office" and it was denied on April 14, 2025. (*Id.*, PageID.6–7.) Plaintiff's complaint then provides additional details regarding his injuries and receipt of medical and mental health care from non-parties at IBC.[3]

Based on the foregoing allegations, Plaintiff avers that Defendants' use of force and failure to provide medical attention following the force violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff also raises a First Amendment retaliation claim,

[3] In this opinion, the Court does not detail Plaintiff's allegations regarding the medical and mental healthcare that Plaintiff received from non-parties at IBC. (*See* Compl., ECF No. 1, PageID.6–7.) To the extent that Plaintiff seeks to hold any of the named LRF Defendants liable for the actions of the non-parties at IBC, he fails to state such a claim. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."

Fourteenth Amendment equal protection claim, and claims under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA). Plaintiff seeks monetary damages.

## II. Motions to Amend

Plaintiff filed two motions to amend or correct his complaint. (ECF Nos. 5 & 10.) Plaintiff's first motion to amend or correct was filed on March 26, 2026, and details an amendment to the monetary relief he initially requested. (ECF No. 5.) On June 29, 2026, Plaintiff filed a second motion to amend or correct his complaint. (ECF No. 10.) Plaintiff's second motion clarified that Defendants Demaagd, Dial, Medina, Ross, Baldwin, Sopel, and Sportell are sued in their official and personal capacities. (*Id.*, PageID.52–53.) Plaintiff's second motion also proposes an additional paragraph to his complaint's Statement of Facts (*id.*, PageID.53), and attaches a second step grievance response. (ECF No. 10-1). To construe Plaintiff's claims in the light most favorable to *pro se* Plaintiff, the Court will grant Plaintiff's two motions to amend or correct, and consider them as supplementing his original complaint. Therefore, these three documents (ECF Nos. 1, 5, and 10) will be treated as a singular complaint in this action.

## III. Motion to Appoint Counsel

Plaintiff filed a motion to appoint counsel to represent him in this matter. (ECF No. 6.) Plaintiff requests appointed counsel because his case has merit, he has proof of his injuries, and it will be difficult to conduct discovery on witnesses at other correctional facilities and for documents designated as confidential. (*Id.*, PageID.23–24.) Plaintiff further states that he "lacks education in law and is not [an] experienced jailhouse lawyer. Plaintiff is hard of hearing and has [Post-Traumatic Stress Disorder]." (*Id.*, PageID.24.)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel,

in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 3) will, therefore, be denied.

**IV. Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## V. Analysis

### A. Defendant MDOC

Plaintiff names the MDOC as a Defendant. (Compl., ECF No. 1, PageID.1.) As an initial matter, Plaintiff does not name Defendant MDOC in the body of his complaint. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights). Defendant MDOC is subject to dismissal for this reason alone.

Moreover, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, the State of Michigan (acting through the MDOC) is not a "person" within the meaning of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person.").

Accordingly, for these reasons, Plaintiff fails to state any claim against Defendant MDOC upon which relief may be granted.

**B. Defendant Corizon**

Plaintiff also names Corizon, a private entity that contracts with the State to provide healthcare at prisons, as a Defendant.

A private entity that contracts with a governmental entity to perform a traditional governmental function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell*, 436 U.S. 658, has been extended to private corporations); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir. 1996) (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the entity. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne Cnty.*, 103 F.3d at 507. "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff alleges that he received inadequate medical care from non-party medical providers; however, Plaintiff fails to allege that any policy or custom was the moving force behind his alleged constitutional injuries. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987). Furthermore, even liberally construing Plaintiff's complaint, as the Court is required to do, even if Plaintiff intended to suggest the existence of a custom, his allegations are wholly conclusory. *Cf. Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Accordingly, because Plaintiff fails to allege the existence of a policy or custom of the private entity, Plaintiff claims against Defendant Corizon, as a private entity that contracts with the state to provide healthcare to inmates, will be dismissed for failure to state a claim.

**C. Defendant King**

Plaintiff lists Defendant King, the Warden at LRF, as a Defendant in this action; however, Plaintiff fails to allege any facts showing how Defendant King was personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–61 (2007) (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore*, 92 F. App'x at 190; *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff does not name Defendant King in the body of his complaint. (*See generally* Compl., ECF No. 1.) Plaintiff's claims against Defendant King therefore fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold Defendant King liable due to his supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because

a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant King encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in their conduct.

Accordingly, for these reasons, Plaintiff's claims against Defendant King will be dismissed for failure to state a claim.

**D. First Amendment Retaliation Claims**

Plaintiff alleges that Defendants Baldwin, Lane, and Dial "retaliated against Plaintiff under protected conduct, violating his First Amendment [rights]." (Compl., ECF No. 1, PageID.7–8.)[4] Plaintiff alleges that Defendant Baldwin violated his First Amendment rights by leaving Plaintiff

[4] Plaintiff specifically set forth the claims he intended to raise in this suit in numbered claims and counts. (*See* Compl., ECF No. 1, PageID.7–8.) Under these circumstances, because Plaintiff indicated the claims he intended to raise in the action, the Court does not construe Plaintiff's complaint as raising any additional claims beyond those articulated by Plaintiff.

in the "restraint chair with mace burning his eyes and [the] handcuffs on too tight." (*Id.*) Defendants Lane and Dial "retaliated against Plaintiff by writing false misconduct [reports] . . . violating his First Amendment [rights]." (*Id.*) For the reasons detailed below, Plaintiff fails to state a retaliation claim under the First Amendment.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, the Court assumes, without deciding, that Plaintiff's grievance activity, both his verbal grievance to Defendant Baldwin following the use of force and his written grievances on January 26, 2025, an unknown date in February 2025, and March 17, 2025, are protected conduct. *See Thaddeus-X*, 175 F.3d at 394. However, Plaintiff's retaliation claims fail on the second and third elements. First, Plaintiff's initial placement in the restraint chair preceded his verbal complaint to Defendant Baldwin. (Compl., ECF No. 1, PageID.5.) Further, Plaintiff specifically alleges that he was left in the restraint chair because Defendant Baldwin believed Plaintiff "assault[ed] one of his officers," rather than due to any protected conduct taken by Plaintiff. (*Id.*) Although Plaintiff verbally complained to Defendant Baldwin upon Plaintiff's initial placement in the restraint chair, Plaintiff's own allegations show that Defendant Baldwin left Plaintiff in the

restraint chair due to his belief that Plaintiff had assaulted an officer. Under these circumstances, although Plaintiff's verbal complaint preceded Plaintiff's continued placement in the restraint chair, Plaintiff's allegations of temporal proximity are insufficient to show that Defendant Baldwin acted with a retaliatory motive. *See, e.g.*, *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).

Likewise, although Defendants Lane and Dial issued Plaintiff two misconduct reports approximately four hours after Plaintiff's verbal complaint to Defendant Baldwin, the issuance of the misconduct reports, on their own, do not show a retaliatory motive because there is no indication that Defendants Lane or Dial were aware of the verbal complaint to Defendant Baldwin, nor are there any facts alleged that would tend to show Defendants Lane or Dial were substantially motivated by Plaintiff's verbal complaint. (*See* Compl., ECF No. 1, PageID.6); *see also Campbell*, 250 F.3d at 1037. The suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy*, 833 F.2d at 108 (7th Cir. 1987) ("[A]lleging merely the ultimate fact of retaliation is insufficient."); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Lastly, Plaintiff's written grievances all postdated the adverse actions he describes in his enumerated counts and claims and are therefore insufficient to allege retaliatory motive, as the complained-of conduct all occurred prior to his protected grievance activities. *See Thaddeus-X*, 175 F.3d at 394

Accordingly, for these reasons, Plaintiff's First Amendment retaliation claims will be dismissed for failure to state a claim.

**E. Eighth Amendment and Medical Treatment Claims**

Plaintiff claims that the force used by Defendants Moore, Lane, Smith, Soper, Demaagd, Dial, Medina, Ross, and Baldwin was excessive. Additionally, Plaintiff claims that Defendants Baldwin and Sportell were deliberately indifferent to his serious medical needs following the use of force. In sum, Plaintiff claims that he was maced unnecessarily and then struck by Defendants while he was restrained in a prone position. (Compl., ECF No. 1, PageID.5.) Plaintiff also claims that his restraints were applied tightly and he was not provided medical treatment for his injuries for approximately one hour. (*Id.*)

**1. Excessive Force Claims**

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is a subjective component and an objective component to Eighth Amendment claims. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

At this early stage in the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Therefore, at this time, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claims against Defendants Moore, Lane, Smith, Soper, Demaagd, Dial, Medina, Ross, and Baldwin.

### 2. Medical Treatment Claims

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle*, 429 U.S. at 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock*, 273 F.3d at 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605

(6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410, 411 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must show that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

At this early stage in the proceedings, the Court will not dismiss Plaintiff's Eighth Amendment medical claims against Defendants Baldwin and Sportell.

**F. Fourteenth Amendment Equal Protection Claims**

Plaintiff claims that Defendant Moore violated the Equal Protection Clause of the Fourteenth Amendment because he "failed to effectively communicate with Plaintiff," as a

hearing-impaired prisoner. (Compl., ECF No. 1, PageID.8.) The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). While Plaintiff suggests that he is a member of a suspect class, disability is not a suspect class. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001). Nevertheless, a state may discriminate on the basis of disability only if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. *Heller v. Doe*, 509 U.S. 312, 320 (1993). In *Bullington v. Bedford Cnty.*, 905 F.3d 467, 476 (6th Cir. 2018), the Sixth Circuit held that the ADA did not preclude the bringing of an equal protection claim for discrimination on the basis of disability.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To state an equal protection claim, Plaintiff must allege sufficient facts to show "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's allegations of discriminatory treatment are conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.

*See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff alleges insufficient facts to show how Defendant Moore's alleged failure to effectively communicate resulted in different treatment than other individuals. *See Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("Although the plaintiffs claim that they have been treated differently from other individuals seeking rezoning, they fail to allege any specific examples of *similarly situated* individuals . . . .")

Accordingly, for these reasons, Plaintiff's Fourteenth Amendment equal protection claims will be dismissed for failure to state a claim.

### G. Americans with Disabilities Act and Rehabilitation Act Claims

Plaintiff contends that Defendant Moore "failed to effectively communicate with Plaintiff," in violation of the Title II of the ADA, 42 U.S.C. § 12131, and Section 504 of the RA, 29 U.S.C. 794(a). (Compl., ECF No. 1, PageID.8.) Plaintiff alleges in his complaint that he "was not given any hearing aids or anything to help with hearing and has a hard time understanding things when they are said." (*Id.*, PageID.5.) Title II of the ADA provides

> . . . that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.). A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Act defines "'public entity'" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State," § 12131(1). [The Supreme Court has] previously held that this term includes state prisons. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

*United States v. Georgia*, 546 U.S. 151, 153-54 (2006). Thus, to state a claim under the ADA, a plaintiff must show that he is "(1) disabled under the statute, (2) otherwise qualified for participation in the program, [services or activities], and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under[,] the program, [services, or activities]

by reason of his or her disability." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

Assuming that Plaintiff's impaired hearing is a disability under the ADA, Plaintiff fails to state a claim. Although Plaintiff alleges that Defendant Moore failed to effectively communicate with him, there are no facts or allegations that tend to show that Plaintiff's lack of hearing aids or assistive devices were because of Defendant Moore. Nor does Plaintiff allege that he was unable to participate in or receive the benefit of a service, program, or activity available to other inmates by reason of his disability. Aside from Plaintiff's statement that he is hearing impaired, he fails to allege any other facts concerning his disability and any impact on the events described in his complaint. (*See* Compl., ECF No. 1). Thus, Plaintiff's allegations concerning Defendant Moore do not state a claim under the ADA or RA. Therefore, Plaintiff's ADA and RA claims will be dismissed.

## **Conclusion**

The Court will grant Plaintiff's two motions to amend or correct his complaint (ECF Nos. 5 and 10), and accept those filings as supplementing his complaint. Further, the Court will deny Plaintiff's motion to appoint counsel (ECF No. 6.), and grant his leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants MDOC, Corizon, and King will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Moore, Lane, Smith,

Soper, Demaagd, Dial, Medina, Ross, Baldwin, and Sportell: First Amendment retaliation claims, Fourteenth Amendment equal protection claims, and claims under the ADA and RA. Plaintiff's Eighth Amendment excessive force claims against Defendants Moore, Lane, Smith, Soper, Demaagd, Dial, Medina, Ross, and Baldwin and Eighth Amendment medical care claim against Defendant Sportell remain in the case.

An order consistent with this opinion will be entered.

Dated: August 21, 2026

/s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge